FRED I. CLARK *vs.* ASA L. YOUNG.

Oxford.    Opinion March 16, 1931.

*H. H. Hastings*, for plaintiff.
*Seth May*, for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, FARRING-TON, JJ.

FARRINGTON, J.    This case, after verdict for $780.00 in favor of the plaintiff, is before this court on general motion, on exceptions to the refusal of the presiding Justice to direct a verdict for the defendant and to give certain requested instructions, and also

on exceptions, seasonably reserved as to the measure of damages, to the following instruction given by the presiding Justice to the jury.

"You will return a written verdict if you come to a conclusion. If you find for the plaintiff you will use the blank which reads, The Jury find for the plaintiff and assess damages for the plaintiff in the sum of blank dollars and cents, inserting therein the damages which you find, which should be the amount that was to be paid for these ties. You will remember what it was, according to the evidence, so much. Sixty cents, was it? Sixty cents apiece for the ties, not to exceed in number thirteen hundred, — whatever the evidence was. The plaintiff can not recover for more than he stated in his claim. As I told you he had to state accurately what his claim was, and he is bound by that. As I say, if you find for the plaintiff you will insert those figures, what that comes to, — thirteen hundred ties at sixty cents apiece, and the foreman of the jury will sign that blank, and the other blank will not be used."

The declaration in the writ is as follows: "In a plea of the case, for that the said plaintiff in the fall season of 1928, contracted and agreed orally with the said defendant to dig out and hew the ship knees on the D. S. Hastings lot, so-called, and to cut out and face the railroad ties on said lot to five inches at the top end inside the bark, tamarack knees and ties, and deliver the same loaded on board the cars at the Bethel station of the Canadian National Railway, during the said fall and the following winter season, the said knees so dug out and hewed and delivered at the following prices, viz: three and four inch knees at the rate of 50c, five inch knees at the rate of 75c, six inch knees at the rate of $1.50, seven inch knees at the rate of $2.00, and eight inch knees at the rate of $3.00, each, and the ties all at the rate of sixty cents each. Said defendant promised to pay the said plaintiff for said knees at said rates, and for said ties at said rate, as the same were in due course of the operation made ready for shipment, and to market said knees and said ties that season.

"And the said plaintiff says that in consequence of said contract and agreement he proceeded to dig and hew said knees and to cut out and face said ties, and as snow came hauled the same to said

station, and piled them in a vicinity close to said station, that the same might be loaded upon the cars as ordered and directed by the said defendant; and that from time to time as the same were ordered loaded on the cars by the said defendant, he loaded and shipped all of the knees, but that to the present time the said plaintiff says that none of the ties have been ordered loaded by the said defendant but remain where they were piled in the early winter of 1929, though the said plaintiff has repeatedly requested the said defendant to take them as agreed or to pay for them and to hold them at his own expense, or in short to complete the said defendant's part of the contract; and has repeatedly assured the said defendant that he stood ready and was ready to load the same on the cars according to the contract, thereby completing his part of said contract.

"Further, the plaintiff avers and says, under said contract with the said defendant, he dug and hewed and hauled to the station and loaded on the cars one hundred and seventeen knees of the following sizes, 46 three and four inch knees, 21 five inch knees, 34 six inch knees, 9 seven inch knees and 7 eight inch knees, and that he cut and faced and landed near said station thirteen hundred ties of the dimensions specified in said contract.

"The plaintiff further avers and says that there was due him from said defendant for said knees, and for said ties not yet loaded on the cars for the reason above said, the sum of nine hundred eight dollars and seventy five cents ($908.75), that the said defendant though often requested has not paid the same but only a part thereof, namely the amount due for the knees shipped, to wit one hundred twenty-eight dollars and seventy five cents ($128.75), but neglects and refuses so to do."

For the purposes of this opinion, it seems unnecessary to make any particular recital of the evidence in the case. There would appear to be no question but that the defendant refused to take the ties, claiming that a large portion of them were not of the size agreed upon between the parties to the suit, and that they were all intermingled. It also appears undisputed that the plaintiff was ready to ship the ties when directed by the defendant and that the defendant did not accept them and that he did not give any direc-

tions as to their being loaded on cars for purposes of shipment and that there was never any delivery on cars.

While from a careful reading of the printed record in the case the Court is of the opinion that there may be a serious question as to whether there is shown such meeting of the minds of the parties to the alleged contract as would give rise to contractual rights or obligations, we do not attempt to decide that point, as we feel that the case, on other grounds, must go back to the trial court.

The charge of the presiding Justice does not contain any instructions as to the brief statement of the defendant that "there has been no delivery, receipt & acceptance of the goods, part payment or earnest or other compliance with the Statute of Frauds" and the defendant did not request any instructions on this point. This phase of the case, in view of this opinion, requires no consideration by this court.

The plaintiff in his argument maintains that his suit was brought to recover a balance due on a special contract covering certain specially manufactured articles. Whether or not ship knees and ties are to be so regarded it is not necessary for this court to make decision. The suit, as evidenced by the declaration, was one clearly brought to recover damages for breach of a single oral contract and the measure of damages to be recovered in such an action is different from that which was given to the jury in the instructions of the presiding Justice, which were in effect that the measure of damages was the full amount of sixty cents for each tie. The verdict rendered by the jury was exactly $780.00, based on the thirteen hundred ties, the number fixed in the declaration.

Sec. 64 of the Uniform Sales Act, Chap. 191, P. L. 1923 (Sec. 64, Chap. 165, R. S. 1930), provides, "(1) Where the buyer wrongfully neglects or refuses to accept and pay for the goods, the seller may maintain an action against him for damages for non-acceptance.

"(2) The measure of damages is the estimated loss directly and naturally resulting, in the ordinary course of events, from the buyer's breach of contract.

"(3) Where there is an available market for the goods in question, the measure of damages is, in the absence of special circum-

stances, showing proximate damage of a greater amount, the difference between the contract price and the market or current price at the time or times when the goods ought to have been accepted, or, if no time was fixed for acceptance, then at the time of the refusal to accept."

It is unnecessary to consider the general motion or the other exceptions in the case, as the portion of the charge by which the jury was instructed as to damages was, in effect, that recovery, if any, must be for the full value of each tie and was error, and the entry must be,

*Exceptions sustained.*